**LAW OFFICES OF GABRIEL DEL VIRGINIA**
30 Wall Street, 12th Floor
New York, New York 10005
Telephone: 212-371-5478
Facsimile: 212-371-0460
*gabriel.delvirginia@verizon.net*

*Attorneys for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re:

   **579 DECATUR, LLC,**

                     Debtor.

Chapter 11

Case No. 24-40196 (ESS)

## DISCLOSURE STATEMENT

### DISCLOSURE STATEMENT DATED DECEMBER 2, 2024
### IN SUPPORT OF CHAPTER 11 PLAN PROPOSED BY 579 DECATUR, LLC, AS
### DEBTOR AND DEBTOR-IN-POSSESSION

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE PLAN PROPONENT BASED UPON PUBLICLY AVAILABLE INFORMATION, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES.

THIS DISCLOSURE STATEMENT IS ACCURATE TO THE BEST OF THE KNOWLEDGE, INFORMATION AND BELIEF OF THE PLAN PROPONENT BASED ON PUBLICLY AVAILABLE INFORMATION. WHILE THE PLAN PROPONENT HAS ENDEAVORED TO MAKE THIS DISCLOSURE STATEMENT AS CLEAR AND ACCURATE AS POSSIBLE, IT HAS NOT BEEN SUBJECT TO AN AUDIT BY A CERTIFIED PULIC ACCOUNTING FIRM.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN, BUT RATHER TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN (WHICH IS INCLUDED AS **EXHIBIT A** TO THIS DISCLOSURE STATEMENT). IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN. ALL HOLDERS OF CLAIMS IN CLASSES ENTITLED TO VOTE ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS ANNEXED HERETO, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT THE PLAN.

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX (LOCAL, STATE OR FEDERAL) ADVICE. EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL

AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THE PLAN PROPONENT HEREBY RESERVES THE RIGHT TO MODIFY, SUPPLEMENT AND/OR AMEND THIS DISCLOSURE STATEMENT PRIOR TO, UP UNTIL, AND AFTER THE DATE OF SUCH HEARING ON APPROVAL HEREOF.

CONFIRMATION MAKES THE PLAN BINDING UPON THE REORGANIZED DEBTOR AND ALL CREDITORS AND OTHER PARTIES IN INTEREST, REGARDLESS OF WHETHER OR NOT THEY HAVE ACCEPTED THE PLAN. IN ADDITION, PURSUANT TO SECTION 1141(d)(1)(B) OF THE BANKRUPTCY CODE, CONFIRMATION OF THE PLAN WILL RESULT IN THE TERMINATION OF ALL RIGHTS AND INTERESTS OF CREDITORS EXCEPT AS PROVIDED FOR IN THE PLAN. YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

579 Decatur, LLC, debtor and debtor-in-possession in the above-captioned case (the "Debtor" or the "Plan Proponent") hereby submits this Disclosure Statement (the "Disclosure Statement"), in support of its Plan of Reorganization (the "Plan")[1] to Plan Proponent's

---

[1] A copy of the Plan is attached hereto as **Exhibit A**.

creditors and other parties in interest. The approval of the Disclosure Statement is not tantamount to a decision by the Court on the merits of the Plan.[2]

## I. INTRODUCTION

The Plan proposed by Plan Proponent is a restructuring of the Debtor's estates through sale the Property (defined below), the Debtor's Cash on hand, and any Cash contributed with a credit bid. The sale of the Property shall be implemented under section 363 of the Bankruptcy Code pursuant to the Bidding and Auction Procedures annexed as Exhibit "A" to the Plan. The Auction will take place no later than February 21, 2025. The Property will be marketed and bids will be solicited prior to the auction at which the bidder that submits the highest and best offer shall be determined by the Plan Proponent as the successful bidder and the bidder with the second-best offer shall be determined as the back-up bidder. The Plan contemplates that all Allowed Claims asserted against the Debtor will be paid on the later of the Effective Date or, when they are determined by this court to be Allowed Claims.

### A.    Purpose of this Document

This Disclosure Statement is submitted pursuant to the requirement imposed on the proponent of a plan by 11 U.S.C. § 1125. The purpose is to disclose information deemed to be material, important, and necessary for the creditors to arrive at a reasonably informed decision in exercising their right, or to vote for acceptance or rejection of the Plan. This Disclosure Statement should be read in conjunction with the accompanying Plan. The Plan is a legally binding document once it is approved by the Court, and should be read in its

---

[2] Any capitalized term not defined in this Disclosure Statement shall have the same meaning ascribed to it as in the Plan.

entirety. Accordingly, holders of Claims and Interests may wish to consult with their own attorney to more fully understand the Plan.

No representations concerning the Plan Proponent, its future business operations, the value of the Properties or the value of any benefits offered to holders of Claims or Interests in connection with the Plan are authorized other than as set forth in this Disclosure Statement. Any representations or inducements made to secure acceptance of the Plan other than those contained in this Disclosure Statement should not be relied upon by a holder of a Claim or Interest. Any such additional representations and inducements should be reported to counsel for Plan Proponent at the address below and to the United States Trustee.

The information contained in this Disclosure Statement has not been subject to certified audit and is based in large extent on information maintained and collected by the Plan Proponent. While every effort has been made to ensure that the assumptions are valid and that the valuations are as accurate as can be made under the circumstances, the Plan Proponent does not certify or warrant the absolute accuracy of the valuations of the Properties.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**1.      Time and Place of the Hearing to Confirm the Plan**

The hearing at which the Court will determine whether to confirm the Plan will take place on _____**, 2025 at ___.m.** before the Honorable Elizabeth S. Stong , United States Bankruptcy Judge, United States Bankruptcy Court, Eastern District of New York, Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East - Suite Suite 1595, Brooklyn, NY 11201-1800. A copy of the Confirmation Hearing Notice is enclosed with this Disclosure Statement.

**2.     Deadline for Voting to Accept or Reject the Plan**

If you are entitled to accept or reject the Plan, vote on the enclosed ballot and return the ballot to the Plan Proponent's counsel, the Law Offices of Gabriel Del Virginia, 30 Wall Street, 12th Floor, New York, NY 10005. See Section XI for a discussion of voting eligibility requirements.

As there is no Impaired Class entitled to vote on the Plan, there is no voting deadline.

**3.     Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon the attorneys for the Plan Proponent, the Law Offices of Gabriel Del Virginia, 30 Wall Street, 12th Floor, New York, NY 10005; the United States Trustee's Office for the Eastern District of New York, One Bowling Green-534 New York, New York 10004, Attention: Nazar Khodorovsky; and all interested parties by _____, **2025**. A copy must also be delivered to the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, at her Honor's Chambers, United States Bankruptcy Court, Eastern District of New York, Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East - Suite 1595, Brooklyn, NY 11201-1800.

**4.     Identity of Person to Contact for More Information**

If you want additional information about the Plan, you should contact counsel for the Plan Proponent, for the Plan Proponent, the Law Offices of Gabriel Del Virginia, 30 Wall Street, 12th Floor, New York, NY 10005.

**5.     Effective Date.**

As the term is used in this Disclosure Statement and the Plan, the Effective Date shall mean the date 15 days after the Confirmation Order is entered, or such other date after the Confirmation Date as may be practicable, but in no event later than 180 days after the Confirmation Order is entered without Bankruptcy Court Approval, which shall be no earlier than the date upon which the order of the Bankruptcy Court confirming the Plan shall have

become final and nonappealable, or, if such date is not a Business Day, the next succeeding Business Day, notwithstanding any pending appeal in respect of the Plan, unless in conjunction with any appeal the effect of the order confirming the Plan is stayed by a Court order.

## II. GENERAL BACKGROUND

The Debtor is a Single Member Limited Liability Company established in New York that owns shall refer to that certain parcel of real property located at 579 Decatur Street Brooklyn, New York 1123, and the building located thereon being valued at approximately $1,500,000.00-2,000,000.00. The Property is subject to a mortgage in favor of 579 Decatur Lender LLC ("Lender")  in the amount $1,741,947.13 (the "Mortgage").   The Debtor is in default under the Mortgage.  The  Lender is  over-secured.

The Plan Proponent filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 16, 2024 (the "Petition Date"). The Plan Proponent's bankruptcy was necessitated to avoid the imminent foreclosure of its building from a lawsuit/judgement ("Lawsuit/Judgement") brought by the Lender.

The Debtor was in default under the Mortgage.

The Plan Proponent seeks to sell the Property in order to provide funding for the Plan. The Auction will take place no later than February 21, 2024.  The Plan will pay all Allowed Claims in full.

## III. POST-PETITION EVENTS

Since the Petition Date, the Debtor has actively been marketing the Property.

Since the Petition Date, the Debtor has retained Gravity Real Estate Advisors LLC as Broker to the Debtor Effective March 15, 2024.(ECF # 19).

.

## IV.   FINANCIAL INFORMATION

The Debtor has filed all schedules of assets, liabilities, income and expenses, a Statement of Financial Affairs, and Monthly Operating Reports which contain the most accurate and current information available to the Plan Proponent.

The Plan Proponent proposes to sell the Property at a public auction as discussed in Section X below.  Holders of Allowed Claims and Interests shall receive a distribution out of the Sale proceeds according to the terms discussed in Section IX below.  As indicated by Section IX, each Class of Claims and Interests will receive payment in full on its Claim.

## V.  EXECUTORY CONTRACTS

To the extent any leases (or any other executory contracts or unexpired leases) are not assumed or rejected, or subject to a motion to assume or reject, they are deemed rejected as of the Effective Date.  The Plan Proponent is not aware of any executory contracts or unexpired leases.

## VI. LIQUIDATION ANALYSIS

11 U.S.C. § 1129(a)(7) requires that each holder of a Claim or Interest that has not voted to accept the Plan receive, on account of Claim or Interest, value that is at least equal to the value such holder would receive in a Chapter 7 liquidation.  All holders of Allowed Claims and Interests will be paid 100% on their Claims. Thus, under the Plan, all holders of Allowed Claims and Interests will receive an amount equal to or greater than the amount they would receive in a Chapter 7 liquidation.  Therefore, the Plan meets the test required by 11 U.S.C. § 1129(a)(7).  Because all holders of Allowed Claims and Interests will be paid in full, the Plan Proponent does not provide a liquidation analysis.

Furthermore, the Plan proposes a sale of the Property at an Auction. In Chapter 7 there would be administrative expenses of conservatively 20% which would not go to

creditors. Here, almost all of the proceeds of the Auction will go to the creditors, plus any bid by a Secured Creditor must include a cash component necessary and sufficient to pay the costs of sale, Administrative Claims, and Priority Claims.

THE PLAN PROPONENT BELIEVES THE PLAN PROVIDES THE GREATEST POSSIBLE RECOVERY TO ALL PARTIES IN INTEREST AND URGES ALL IMPAIRED CLASSES TO VOTE IN FAVOR OF THE PLAN.

## VII. SPECIAL RISK FACTORS

Certain substantial risk factors are inherent in most plans in Chapter 11 cases. If such plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case.

While the estate has sufficient assets to satisfy all claims against it, the nature of the risks associated with this Plan related to possible delay in payment of creditors. This Plan bears the risk that the Creditors will need to wait an additional period of time for the estate to market and sell the Property.

ALL THE RISK FACTORS INHERENT IN A PLAN UNDER CHAPTER 11 ARE PRESENT IN THIS CASE. CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

## VIII. SUMMARY OF BANKRUPTCY COMPROSMISE

The Debtor entered into extensive negotiations with the Lender in order to reach the Plan. Without the Lenders approval, it would have been difficult for the Debtor to confirm a Plan – especially a Plan that would pay all creditors with 100% of their debt.

## IX. SUMMARY OF PLAN OF REORGANIZATION

A.  **Purpose of the Plan of Reorganization**

As required by the Code, the Plan classifies Claims and Interests in various Classes and describes the treatment each Class will receive. Pursuant to this Plan, each class of Claims and Interests is Unimpaired because they will be paid in full on their Allowed Claims and Interests. Because all Classes of Claims and Interests are Unimpaired, no Class of Claims or Interests will be entitled to vote to accept or reject the Plan.

### B.    Unclassified Claims

Certain types of Claims and Interests are automatically entitled to specific treatment under the Code. They are not considered Impaired, and holders of such Claims and Interests do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent have not placed the following Claims in any Class:

#### 1.    Administrative Claims

Administrative Expenses are costs or expenses or administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. The Code requires that all Administrative Expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The Plan proposes that all Allowed Administrative Expenses be paid on the Effective Date, unless it is a liability incurred in the ordinary course of business (which may be paid in the ordinary course of business) or it is a right to payment relating to assumption or rejection of executory contracts and unexpired leases (which may be paid over a 12-month period or other period set by the Bankruptcy Court). Administrative Expenses include the following:

Professional fees:           estimated at $x0,000.00

Office of the US Trustee:   estimated at $_____

#### 2.    Allowed Priority Tax Claims

Holders of any Priority Tax Claims shall receive cash on the Effective Date in the amount of such Allowed Claims. The Plan Proponent is not aware of any such claims that have been asserted against the Plan Proponent.

### 3. Classes of Claims and Equity Interests

The Plan shall provide for the payment of all expenses of this proceeding, including fees due the Office of the U.S. Trustee. The accompanying Plan divides holders of Claims and Interests into the following Classes. All Classes of Claims and Interests are Unimpaired: Claims against and Interests in the Debtor will be classified and treated as follows except to the extent otherwise agreed.

**A.    General Rules of Classification**. Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class. Notwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by a classification made or implied herein.

**B.    Treatment and Classification of Claims.** Holders of Claims or Interests will be classified and treated as follows except to the extent that the holders of such Claims or Interests agree to different treatment. If a Claim qualifies for inclusion in a more specifically defined Class and a more generally defined Class, then the Claim shall be included only in the more specifically defined Class.

All Classes of Claims and Interests are Unimpaired, as the Plan does not alter the legal, equitable, or contractual rights of the holders of such Claims.

Class I - Allowed Secured Claims.  This Class consists of the following Secured Claims: (i) proof of claim number 1 in the amount of $1,741,947.13 filed by Lender secured by a judgment lien on the Property; and (ii) proof of claim number 2 in the amount of $11,393.13 filed by the New York City Department of Finance secured by a lien on the Property. Holders of Allowed Secured Claims shall receive payment in full of their Allowed Secured Claims on the Effective Date or upon the Sale of the Property, should such Sale occur prior to the Effective Date.

Class II – Allowed Unsecured Claims.  This Class consists of all Allowed Unsecured Claims against the Debtor's estate.  Holders of Allowed Unsecured Claims will receive payment in full on the Effective Date.

Class III – Allowed Interests of 579 DECATUR, LLC.  Holders of Allowed Interests of    579 DECATUR, LLC shall receive interests in the Reorganized Debtor in the same amount that existed as of the Petition Date.

The Plan will be funded the proceeds of the Sale of the  Property.  The Plan is deemed by the Plan Proponent to be feasible as the value of the Property exceeds the amounts necessary to fund all projected Allowed Claims.

## X. THE PROPOSED AUCTION

As previously discussed, the Plan will be funded by the Sale of the Property by Auction.  The Auction shall take place no later than February 21, 2204 under the terms set forth in Exhibit A to the Plan,.

## XI. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requires that:  the Plan must be proposed in good faith; at least one Impaired Class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each holder of a Claim or Interest at least as much as the holder would receive in a Chapter 7 liquidation case, unless the holder votes to accept the Plan; and the Plan must be feasible.  These requirements are not the only requirements listed in 11 U.S.C. § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to accept or reject the Plan.  A holder of a Claim or Interest has a right to vote for or against the Plan only if that holder has a Claim or Interest that is both (1) Allowed or allowed for voting purposes; and (2) Impaired.

In this case, no Class is Impaired and, as such, no Class is entitled to vote to accept or reject the Plan.

#### 1. What is an Allowed Claim?

Only a holder of a Claim or an Interest that is Allowed has the right to vote on the Plan.  Generally, a Claim or Interest is allowed if either (1) the debtor has scheduled the Claim or Interest on their schedules, unless the Claim or Interest has been scheduled as disputed, contingent, or unliquidated, or (2) the holder has filed a proof of claim or interest, unless an objection has been filed to such proof of claim or interest.  When a Claim or Interest is not allowed, the holder cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim or Interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was June 14, 2024 for non-governmental units and August 15, 2024 for all governmental units.***

### 2. What is an Impaired Claim?

As noted above, the holder of an Allowed Claim or Interest has the right to vote only if it is in a class that is Impaired under the Plan. As provided in § 1124 of the Code, a Claim or Interest in considered Impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class.

### 3. Who is Not Entitled to Vote?

The holders of the following types of Claims and Interests are not entitled to vote:

- holders of Claims and Interests that have been disallowed by an order of the Court;

- holders of Claims and Interests that are not Allowed Claims or Allowed Interests, unless they have been Allowed for voting purposes;

- holders of Claims or Interests in Unimpaired Classes;

- holders of Claims entitled to priority pursuant to §§ 507(a)(2), (a)(3) and (a)(8) of the Code;

- holders of Claims or Interests in Classes that do not receive or retain any value under the Plan; and

- holders of claims for Administrative Expenses.

***Even if you are not entitled to vote on the Plan, you have a right to object to confirmation of the Plan.***

### 4. Who Can Vote in More than One Class?

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise holds claims in multiple Classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.     Votes Necessary to Confirm the Plan**

If Impaired Classes exist, the Court cannot confirm the Plan unless (1) at least one Impaired Class has accepted the Plan without counting the votes of any insiders within that Class, and (2) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes as discussed below in Section B.2.

**1.     Votes Necessary for a Class to Accept the Plan**

A Class of Claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the Allowed Claims in the Class cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class cast their votes to accept the Plan. A Class of Interests accepts the Plan if the holders of more than two thirds (2/3) in amount of the Allowed Interests of the Class cast their votes to accept the Plan.

**2.     Treatment of Nonaccepting Classes**

Even if one or more Impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner prescribed by 11 U.S.C. § 1129(b). A plan that binds nonaccepting Classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of Claims or Interests if it meets all the requirements for consensual confirmation except the voting requirements of 11 U.S.C. § 1129(a)(8), does not "discriminate unfairly" and is "fair and equitable" toward each Impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cram down" confirmation will affect your Claim or Interest, as the variations on this general rule are numerous and complex.***

## XII.

## INJUNCTION AND RELEASES

**A.     Injunction**

Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order and entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim or Interest held as of the Effective Date: (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Properties or property of the Debtor's estate that has been, or is to be, distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Properties or any property of the estate that has been, or is to be transferred or distributed under the Plan.

### B.    Limitation of Liability

Neither the Debtor nor any of its respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them (collectively, the "Released Entities"), shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, or any other action taken or omitted to be taken in connection with the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the Confirmation Order shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United or other proceedings against the Released Entities referred to herein for any liability what-

ever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Entities referred to herein.

### C.   Plan and Confirmation Order as Release

Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute a complete defense to any Claim or liability not otherwise asserted in the Plan.

## XIII. TAX CONSEQUENCES

The following discussion summarizes certain federal income tax consequences of the Plan to the Debtor and the holders of Claims based upon the Internal Revenue Code, the Treasury Regulations promulgated thereunder, judicial authorities and current administrative rulings and practices now in effect, all of which are subject to change at any time by legislative, judicial or administrative action. Any such change could be retroactively applied in a manner that could adversely affect the Debtor and holders of Claims. In addition, certain aspects of the following discussion are based on proposed Treasury Regulations. The tax consequences of certain aspects of the Plan may be subject to administrative or judicial interpretations that differ from the discussion below. The Plan Proponent has not requested, nor do they intend to request, a tax ruling from the IRS, nor will the Plan Proponent, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. Further, matters not discussed below may affect the federal

income tax consequences to the Debtor, holders of Claims and holders of Interests. For example, the following discussion does not address state, local or foreign tax considerations that may be applicable to the Debtor or the holders of Claims, and the discussion does not address the tax consequences of the Plan to certain types of holders of Claims and holders of Interests (including non-U.S. persons, financial institutions, life insurance companies, tax-exempt organizations and taxpayers subject to the alternative minimum tax) who may be subject to special rules not addressed herein.

THE DISCUSSION SET FORTH BELOW IS INCLUDED FOR GENERAL INFORMATION ONLY. THE PLAN PROPONENT AND ITS COUNSEL ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, WITH RESPECT TO THE DEBTOR, HOLDERS OF CLAIMS OR HOLDERS OF INTERESTS, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES. THE TAX LAWS APPLICABLE TO INDIVIDUALS AND CORPORATIONS IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND THE FOLLOWING SUMMARY IS NOT EXHAUSTIVE. HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE STRONGLY URGED TO CONSULT THEIR TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING FEDERAL, FOREIGN, STATE AND LOCAL TAX CONSEQUENCES.

### A. Tax Consequences to the Debtor

Consummation of the Plan, including possible cancellation of indebtedness of the Debtor and other actions required under the Plan may result in recognition of income, deductions, gain or loss to the Debtor and the possible incurrence of tax obligations on the part of the Debtor or the Plan Proponent. Any such tax may constitute an Administrative Expense Claim.

**B.     General Tax Considerations for Holders of Claims**

The receipt of cash or forgiveness of a debt may result in a taxable transaction. The Plan Proponent has not researched the tax consequences of the Plan to holders of Claims and Interests, nor has it requested a ruling from any federal, state or local taxing authorities with respect to these matters. There may be federal, state, local or foreign tax considerations applicable to any or all holders of Claims and Interests. EACH CREDITOR AND HOLDER OF AN INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN AND APPLICABLE FEDERAL, STATE, LOCAL AND FOREIGN TAX LAWS.  The Plan is not intended to result in the forfeiture or compromise of any of the Debtor's tax attributes, all of which are preserved to the extent allowed by applicable law.

**C.     Transfer Taxes**

Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall be exempt and shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax, and, to the extent provided by § 1146 of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax. In addition, pursuant to § 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the City Register of the City of New York, County of New York (the "Register") to record any recordable document executed in connection with the consummation of the Plan, without the payment of transfer taxes. The Register, and any applicable Register's Office in the State of New York or its municipalities and counties shall record any recordable document executed in connection therewith without the payment of any transfer taxes.

In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

## XIV. CONCLUSION

The Plan proposes the Sale of the Property by public Auction, with the proceeds of the Sale being used to satisfy all Claims and Interests under the terms discussed in the Plan.

Dated:  January 20, 2025 　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By:  s_____
　　　　　　　　　　　　　　　　　　　　Cory Hewett,
　　　　　　　　　　　　　　　　　　　　Debtor / Plan Proponent

Dated:  January 20, 2025 　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By:  /s_____
　　　　　　　　　　　　　　　　　　　　Gabriel Del Virginia
　　　　　　　　　　　　　　　　　　　　**LAW OFFICES OF
　　　　　　　　　　　　　　　　　　　　 GABRIEL DEL VIRGINIA**
　　　　　　　　　　　　　　　　　　　　30 Wall Street, 12th Floor
　　　　　　　　　　　　　　　　　　　　New York, New York 10005
　　　　　　　　　　　　　　　　　　　　Telephone: 212-371-5478
　　　　　　　　　　　　　　　　　　　　Facsimile: 212-371-0460
　　　　　　　　　　　　　　　　　　　　*gabriel.delvirginia@verizon.net*

　　　　　　　　　　　　　　　　　　　　*Attorneys for the Debtor
　　　　　　　　　　　　　　　　　　　　and Debtor-in-Possession*